IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 30 2017

JAMES W. McCORMACK, CLERK
By:
DEP CLERK

MICHAEL NELLUMS                          PLAINTIFF

vs.                    Case No. *5:17cv279-BSM*

PINE BLUFF SCHOOL DISTRICT,
a public body corporate                          DEFENDANT

**COMPLAINT**

This case assigned to District Judge *Miller*
and to Magistrate Judge *Kay*

1.   The court's jurisdiction is pursuant to 28 U. S. C. § 1343
and 42 U. S. C. § 2000(e), et. seq. The relief sought by plaintiff is
authorized by 42 U. S. C. §§ 1981 and 2000( e), et seq.

2.   The plaintiff Michael Nellums is a United States citizen of
African American descent over the age of 40 years who resides in
Pulaski County, Arkansas.  Plaintiff graduated from the University of
Central Arkansas (UCA) in 1985 with a BSE degree with a Social
Science major.  He also graduated from UCA with a MSE degree in
Educational Leadership in 1991.  He was awarded the Ed.D degree by
the University of Arkansas at Little Rock in 2011.

Plaintiff was a secondary education school teacher between
1985 and 1991. In 1991 to 1992, he was the director of the Teacher of
Tomorrow program. Between 1992-2003, plaintiff served as an

assistant principal.  Between 2003-2011, plaintiff was a high school principal.  All the foregoing experiences were with the Pulaski County Special School District.

3.   The defendant Pine Bluff School District (PBSD) is a public body corporate which operates public schools of Pine Bluff, Jefferson County, Arkansas.  It is an employer as that term is defined by 42 U. S. C. § 2000(e).

4.   Plaintiff seeks declaratory relief pursuant to 28 U. S. C. § 2208 and other relief as provided by the cited statutes and as set forth in the prayer for relief in order to redress deprivation of rights secured by law.

5.   Plaintiff applied for the vacant position of principal of the Pine Bluff High School in the spring of 2012.  Pursuant to the district's written policy, he was interviewed, met the criteria and was determined to be the best qualified applicant. He was selected for and began serving as the high school principal on July 1, 2012.  He held that position until June 30, 2017.

6.   Plaintiff presents two claims in this lawsuit.  Each was preceded by a charge of discrimination which he filed with the United States Equal Employment Opportunity Commission (EEOC).   The EEOC charges are numbered 493-2016-01769, Exhibit A and 493-2017-01429, Exhibit B.  A Right to Sue Notice dated May 22, 2017 regarding

2

Charge No. 01769 was not acted upon by Plaintiff. Charge No. 493-2017-01429 is being acted upon herein by the filing of this action within 90 days of plaintiff's receipt of Notice of Right to Sue on August 3, 2017.

7.   The superintendent of the Pine Bluff School District for the 2014-2016 school years was Dr. T.C. Wallace.   In March, 2016, Superintendent Wallace decided to place plaintiff as principal of Bel-Air Middle School, a "troubled" school.  He did so because of plaintiff's successful "turn around" of Pine Bluff High school.  Plaintiff agreed to accept the transfer with his continued high school pay for two years.

8.   In April, 2016, the Pine Bluff School Board gave notice to Superintendent Wallace that his contract would not be renewed. The Board hired Dr. Michael Robinson as his replacement effective July 1, 2016.   Between May and July 1, 2016, Robinson acted as interim superintendent with the Board's approval.

9.   In June, 2016, Superintendent Robinson decided that he would retain plaintiff of Pine Bluff High School rather than have plaintiff transfer to Bel-Air Middle School.

10.  In June, 2016, the district's Human Resources Director position became vacant.  The position was titled Director of Human Capital.  Plaintiff promptly applied for the posted vacancy.  He met all qualifications of the posted vacancy.

3

11. Superintendent Robinson declined to afford plaintiff an interview for the position of Director of Human Capital.   Upon plaintiff's inquiry as to why he was not afforded an interview nor selected, Superintendent Robinson informed plaintiff that he had no obligation to interview nor select.

12. In July, 2016, Superintendent Robinson selected a person some twelve years younger than plaintiff for the position of Director of Human Capital.    The selectee, on information and belief, was pre-selected.   The selectee was further materially less qualified for the position by objective standards than the plaintiff.

13. Plaintiff's first EEOC charge (Charge No. 493-2016-01769) addressed plaintiff's non- selection for the Director of Human Capital position.   Plaintiff also filed a timely grievance with Superintendent Robinson regarding his non-selection as Director of Human Capital. That same month, plaintiff prepared a waiver request for submission to the Arkansas Department of Education (ADE) wherein he would be able to hire five core subject teachers for vacant core teaching positions.   Superintendent Robinson, with the support of the School Board President, directed plaintiff to withdraw the waiver request and to meet the schools needs with substitutes, if necessary.

14. Because plaintiff perceived Superintendent Robinson as

attempting to diminish the academic success of the Pine Bluff High school and to discredit him, plaintiff included those contentions in a grievance to the School Board and as a part of his retaliation charge (Charge No. 493-2017-01429).

15. Beginning July, 2016 and continuing over a period of several months thereafter, plaintiff filed grievances regarding Superintendent Robinson's decisions to, among other things, a) deny the requested ADE waivers and b) to deny him an interview for the Director of Human Capital position.  See Exhibit C.

16. Plaintiff had no success with his grievances before Superintendent Robinson. Plaintiff followed up the grievances by making a request for a hearing before the Pine Bluff School Board on the issues raised in early 2017.  The school board declined to hear plaintiffs grievances.

17. Plaintiff's first charge of employment discrimination was filed with the EEOC in August, 2016.  The defendant received notice of the charge, on information and belief, on or about September 1, 2016. On or about May 25, 2017, defendant also received notice that the plaintiff had been issued his Notice of Right to Sure on this charge.

18.  On May 30, 2017, plaintiff was presented a new contract on a "take it or leave it" basis for the position of "Supervisor for Maintenance, Safety and Operations."  See Exhibit D.

19. The position which Superintendent Robinson mandated plaintiff to either take or leave oversaw the district's transportation system and required its holder to possess a "high school diploma." The position is not on par with that of either a school principal or a school director in the Pine Bluff School District. See Exhibit E.

20. Plaintiff alleges and contends that his treatment by Superintendent Robinson for which he made charges of employment discrimination with the EEOC on two separate occasions were in retaliation for his filing same. Plaintiff contends that this is violative of his rights protected by 42 U. S. C. § 2000(e), the Civil Rights Act of 1964.

21. Plaintiff also alleges and contends that defendant's non-selection of plaintiff for the position of Director of Human capital violates the age discrimination requirements implemented by the EEOC (and policies otherwise to be implemented pursuant to school board policy).

22. On July 24, 2017, plaintiff filed his most recent charge of employment discrimination based upon retaliation and age regarding actions taken by defendant on or after July 1, 2017. Exhibit B. He incorporates the allegations of his charge into this complaint by reference.

23. The foregoing actions of the defendant violate well

6

established law with which defendant is well acquainted. Plaintiff has no adequate remedy at law by which to remedy the wrongs which defendant has perpetrated upon him other than this action for declaratory and injunctive relief as provided by 42 USC §§ 1981 and 2000(e), et. seq. Defendant's demotion of plaintiff and its other adverse treatment and retaliatory behavior toward plaintiff have caused plaintiff to suffer substantial income loss, diminution of professional status, embarrassment and mental anguish for which plaintiff is entitled to relief as provided by law.

WHEREFORE, plaintiff prays that this matter be set for early hearing before the court and after such hearing that he be provided such assignments as are consistent with the position of Director of Human Capital or High School Principal as may exist or may come available in the future while being paid at the highest pay level of such position until a vacancy occurs; that he be awarded equitable relief including backpay, benefits and such front pay as may be necessary to make plaintiff whole; and compensatory and punitive damages. He further requests that his name be cleared in the records of the district which reflect that plaintiff engaged in improper, or unlawful actions to the school district  in his service as High School Principal and/or his other service in the district.

Plaintiff seeks compensatory damages pursuant to Title VII and 42 U.S.C. § 1981 in the amount of $1,000,000.00 and equitable relief in the amount of $150,000.00.

Plaintiff further prays for reimbursement of his costs and payment of reasonable counsel fees pursuant to 42 U.S. C. § 1988.

Respectfully submitted,

John W. Walker – AB64046
JOHN W. WALKER, P.A.
1723 Broadway Street
Little Rock, Arkansas  72206
501-374-3758
501-374-4187 (facsimile)
Email: johnwalkeratty@aol.com


Date: October  30, 2017

8

**EXHIBIT B**

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 493-2017-01429 |
| | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Michael Nellums** | **(501) 664-9173** | **1962** |

Street Address: **35 Berkshire Dr., Little Rock, AR 72204**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **PINE BLUFF SCHOOL DISTRICT** | **500 or More** | **(870) 543-4200** |

Street Address: **512 S. Pine St, P.O. Box 7678, Pine Bluff, AR 71601**

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☒ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION ☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE — Earliest **04-01-2017** Latest **07-24-2017**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired in 2012 and worked most recently as a high school principal. I was demoted/reassigned from the Principal position 7/1/2017.

I was not given a reason for my reassignment.

I believe I was reassigned because of my age (56) in violation of the Age Discrimination in Employment Act of 1967, as amended (ADEA), and in retaliation for the filing of my 2016 EEOC Charge against the employer, also in violation of the ADEA.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

**Jul 24, 2017** — Date — Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

RECEIVED

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)



EXHIBIT

C

October 12, 2016

Mr. Henry Dabner, President
Pine Bluff School Board

Mrs. Andrea Roaf-Little, Vice President
Pine Bluff School Board
Pine Bluff, Arkansas 71601

Mr. Dabner and Mrs. Roaf-Little:

Please see the enclosed grievance and attachments. I look forward to a hearing regarding these
matters and/or an amicable resolution outside of an official hearing.

Sincerely,

Dr. Michael Nellums, Principal
Pine Bluff High School

C: Rickey Hicks

# Pine Bluff School District Certified Grievance Form

Grievant:  Dr. Michael Nellums                    Date: October 12, 2016

Statement of grievance: See attached

Grievance Item 1. On May 3, 2016, I received a letter from Dr. T.C. Wallace, Superintendent of Schools, reassigning me to Belair Middle School effective July 1, 2016.

According to Pine Bluff School Board policy, Chapter IV, Section D, Assignment and Transfer of Personnel:

    1.     **The superintendent shall assign all personnel.**

    2.     The assignment of teachers will conform to these basic principles:

          a.     Personnel will be assigned to the available position for which they are best qualified.

          b.     Assignments shall be based upon training, experience, seniority and other factors as would influence success in the position.

Dr. Wallace acted within his rights, (which is supported by board policy and past practices) in reassigning me to the position at Bel-Air middle school. The incoming superintendent did not have the authority to block the reassignment of my administrative position from Pine Bluff High to that of principal at Belair Middle School effective July 1, 2016. That decision violated the boards own policy concerning the superintendents rights to reassign employees as evidenced by numerous employee reassignments by Dr. Robinson, and my right to work in a safe school climate.

Grievance Item 2

I was denied an opportunity to interview for the position of Director of Human Capital. Though I submitted my application, I was not interviewed. My subordinate with less experience and qualifications received an interview and was subsequently hired for the position. The policies violated are as follows from the PBSD policy manual.

IV. CERTIFIED TEACHING STAFF

A.    **Employment Procedures**

   7.   The Pine Bluff School District is an equal opportunity employer and is dedicated to a policy of non-discrimination in hiring its employees. The district does not discriminate because of age, race, creed, color, sex, religion, national origin, or handicap.

D.    **Assignment and Transfer of Personnel**

   3.   The superintendent shall assign all personnel.

   4.   The assignment of teachers will conform to these basic principles:

   a.   Assignments shall be based upon training, experience, seniority and other factors as would influence success in the position.
   i.   All employees will receive equal consideration for available positions.

   j.   Current district employees will receive consideration for available positions.

   l.   When openings occur during the summer, the superintendent will make an effort to notify each employee who has indicated an interest in the position.

All certified district employees except the superintendent are considered teachers under Arkansas Fair Dismissal Law.

Grievance Item 3. I am forced to work in a persistently dangerous school environment.

On September 2, of this year, less than two weeks into school, I took a loaded Glock 22 handgun from a student. The gun had a thirty bullet clip and laser target attached. The student had been previously arrested, yet the school was not made aware of his propensity for violent behavior and his likelihood of carrying weapons before he arrived at Pine Bluff High.  This gun represented the **seventh (7th)** loaded handgun that I have found on the campus in the last 4 years and two months. Since I have been out on medical leave, another gun carried by a student was reported as well. Yet no additional safety measures have been discussed with me, or put in place by the central administration. While the superintendent continues to be critical of the schools culture, he fails to recognize and address that our campus culture reflects the culture of an extremely violent city. In less than one year, Pine Bluff City police reported over five hundred incidents within a five block radius of the school, yet the superintendent consistently overlooks or disregards the immediate safety issues the school. We are a 50 acre campus without borders, with inadequate

security, and we have over 200 students with active criminal cases in the juvenile and adult court system in Pine Bluff.

Based upon the continuous discovery of loaded handguns on the campus of Pine Bluff High, I often fear for my life and personal safety as well the lives of my students and faculty due to the increasingly violent behavior of our students and their propensity to brandish weapons. The superintendent and the Director of Security cannot continue to make arbitrary decisions about security without collaborating with the building principal.

# Pine Bluff School District Certified Grievance

Grievant:  Dr. Michael Nellums                    Date: November 18, 2016


Statement of grievance: See narrative below


Grievance Item 1. I am forced to work in a persistently dangerous school environment.

On September 2, of this year, less than two weeks into school, I took a loaded Glock 22 handgun from a student. The **loaded handgun** had a thirty bullet clip and laser target attached. The student had been previously arrested, yet the school was not made aware of his propensity for violent behavior and his likelihood of carrying weapons before he arrived at Pine Bluff High. This gun represented the **seventh (7th)** loaded handgun that I have found on the campus in the last 4 years and two months.

On September 12th, while conducting a random search of a student, I discovered an electrical Taser. This is a weapon used to stun or shock an individual. The following day, September 13th, Dr. Wilson and I discovered another Taser on a female student.

On November 7, 2016 **a loaded handgun** was found on a student along with a box cutter razor. According to a statement in the local paper the student stated that she brought the gun to campus with the intent of shooting herself in the bathroom. Yet no additional safety measures have been discussed with me, or implemented by the central administration.

On November 18, 2016 a large caliber **loaded handgun** was found on campus by police and security personnel. Security stated that during a gang fight, a weapon was drawn and students began to flee the general area.  This represents the 5th handgun seen on campus and the third one confiscated. This is unreal. This plethora of weapons represent a clear and present danger to our campus and the safety and security of all of the students and staff on the entire campus. While the superintendent continues to be critical of the schools culture, he failed to recognize and address the single most important contributor to PBHS campus culture; the culture of an extremely violent city with *violent juvenile behavior*. In less than one year, Pine Bluff City police reported over five hundred incidents within a five block radius of the school, yet the superintendent consistently overlooks or disregards the immediate safety issues facing the school. We are a 50 acre campus without borders, with inadequate security, and we have over 200 students with active criminal cases in the juvenile and adult court system in Pine Bluff.

Based upon the continuous discovery of loaded handguns on the campus of Pine Bluff High, numerous gang fights, assaults by students against others on campus and in the surrounding blocks near campus, I often fear for my life and personal safety as well as the lives and safety of my students and faculty. Due to the increasingly violent behavior of our students and their propensity to brandish weapons, the environment is persistently dangerous and should have a larger, better trained security force, a realistic security plan that addresses the numerous (documented) violent student offenders on campus with active criminal cases, a retaining or separation wall that keeps the community at bay, as well as enhanced security measures unique to the urban environment that the school serves. The Superintendent and the Director of Security cannot continue to make arbitrary decisions about security without collaborating with the building principal, or utilizing community and juvenile data to assess school security needs.

Grievance Item #2. The school is not properly staffed to administer the curriculum needs of the student body, and no curriculum exists for implementation in the Language Arts department.

A. In April of 2016, on behalf of the Pine Bluff School District I submitted a district certified staffing waiver to the State Board of Education. In May of 2016, that request was pulled at the behest of the Board President, Mr. Henry Dabner and the Superintendent of Schools, Dr. C. Michael Robinson. Because of that action, Pine Bluff High lost two math Mrs. Rice, and Mr. Fields who would have been granted licensure under the approved waiver. The teacher have been replaced by an on-line class called Virtual Arkansas. For almost three weeks, the students received no instruction because the school had no internet connectivity. Since then, the students have struggled with on-line instruction and on occasion, one of the virtual teachers has refused to work with the students, essentially disconnecting herself from two-way instruction.

B. As of November 1, 2016 a majority of students had not been pre-assed in neither Math nor English for readiness and performance levels. This is due to a dysfunctional internet/network system and a change in program assessment software from the previous year. Because of these actions and no English curriculum, our students AIP's have not been developed and necessary data for school improvement efforts has not been compiled for dissemination to appropriate faculty and staff.

C. As of November 14, 2016 our building was still not fully staffed. The needs included a Family and Consumer Science Teacher, A Business Education Teacher, a Literacy Coach, multiple math positions and multiple support positions titled Interventionist.

These unaddressed specific needs lead me to the conclusion that the central administration is withholding crucial instructional support necessary for academic improvement and growth, and not supporting the safety and well-being of the students and staff.

Grievance item #3. The School Improvement Officer mandated by the ADE School Improvement Office has not served in that capacity for almost eight (8) weeks thus jeopardizing

all school improvement efforts, including new teacher mentoring, and student intervention support programs.

Dr. Lewis has served as co-principal in my absence and has not performed the expected duties of the school improvement specialist. In a letter to Dr. Lewis dated October 5th, and forwarded to you, I outlined my expectations of Dr. Lewis while serving in the capacity of School Improvement Officer. These expectations included:

- The role of the school improvement specialist is to build capacity in the use of effective instruction by providing ongoing coaching, demonstrative teaching, and providing prescriptive intervention strategies for all teachers.
- It is important that you collaborate with each building administrator and identify specific teachers with the greatest instructional needs. It is a comprehensive piece that also requires that you regularly monitor and evaluate which instructional programs used by teachers are actually effective for our students.
- It is also important that you Identify and monitor appropriate remediation services.
- Working with advance placement students.
- Display and share knowledge of effective coaching practices.
- Your CWT's observations should have allowed you to ascertain that many of our core teachers are novice (possessing less than five years' experience) and need effective modeling with systematic instruction.
- As a specialist, I hope you view your role in that vein of thought; supporting, coaching, assisting. In that light I view you as a facilitator providing training and professional development to those individuals while ensuring the implementation of the district's curriculum.
- Analyze specific class and school instructional data relevant to the schools removal from the Arkansas academic distress list.
- Hold collaborative conversations with the school's assistant principals and leadership team, and develop a strategic plan to move our school beyond the bottom five percent necessary for removal from the Academic Distress List.
- Sharing the Strategic Removal Plan with me.


Grievance Item #4. Our internet network system is non-functional and unreliable.

Based upon the lack of network connectivity for the first three weeks of the school year and the subsequent technical issues that have continued to plague the facility WEEKLY, and sometimes daily, the internet issues have had and continue to have a negative impact on the student academic program. The lack of consistent network service has also had a negative impact on the faculty, their ability to do their jobs, and the collegiality of the staff members. This has negatively impacted the professional culture of our school.

Thank you for your time and attentiveness to this matter.

*Delivery by hand and via-email.*

# Pine Bluff School District Certified Grievance Form

Grievant:  Dr. Michael Nellums                    Date: December 2, 2016


Statement of grievance: See included narrative below

.

Grievance Item 1. In May of 2016, I received a letter from Dr. T.C. Wallace, Superintendent of Schools, reassigning me to Belair Middle School effective July 1, 2016.

According to Pine Bluff School Board policy, Chapter IV, Section D, Assignment and Transfer of Personnel:

   1.     The superintendent shall assign all personnel.

   2.     The assignment of teachers will conform to these basic principles:

        a.     Personnel will be assigned to the available position for which they are best qualified.
        b.     Assignments shall be based upon training, experience, seniority and other factors as would influence success in the position.

Dr. Wallace acted within his rights, (which is supported by board policy and past practices) in reassigning me to the position of principal at Bel-Air middle school. The incoming superintendent did not have the authority to block the reassignment of my administrative position from Pine Bluff High to that of principal at Belair Middle School effective July 1, 2016. That decision violated the boards own policy concerning the superintendents rights to reassign employees as evidenced by numerous employee reassignments by Dr. Robinson, and my right to work in a safe school climate.

Grievance Item 2

I was denied an opportunity to interview for the position of Director of Human Capital. Though I submitted my application, I was not interviewed. My subordinate with less experience and qualifications received an interview and was subsequently hired for the position. The policies violated are as follows from the PBSD policy manual.

IV. CERTIFIED TEACHING STAFF

**A.    Employment Procedures**

       7.  The Pine Bluff School District is an equal opportunity employer and is dedicated to a policy of non-discrimination in hiring its employees.  The district does not discriminate because of age, race, creed, color, sex, religion, national origin, or handicap.

**D.    <u>Assignment and Transfer of Personnel</u>**

    3.    The superintendent shall assign all personnel.

    4.    The assignment of teachers will conform to these basic principles:

       a.    Assignments shall be based upon training, experience, seniority and other factors as would influence success in the position.

       i.    All employees will receive equal consideration for available positions.

       j.    Current district employees will receive consideration for available positions.

       l.    When openings occur during the summer, the superintendent will make an effort to notify each employee who has indicated an interest in the position.

All certified district employees except the superintendent are considered teachers under Arkansas Fair Dismissal Law.

<u>Grievance Item 3. I am forced to work in a persistently dangerous school environment.</u>

On September 2, of this year, less than two weeks into school, I took a loaded Glock 22 handgun from a student. The **<u>loaded handgun</u>** had a thirty bullet clip and laser target attached. The student had been previously arrested, yet the school was not made aware of his propensity for violent behavior and his likelihood of carrying weapons before he arrived at Pine Bluff High. This gun represented the **seventh (7th)** loaded handgun that I have found on the campus in the last 4 years and two months.

On September 12th, while conducting a random search of a student, I discovered an electrical Taser. This is a weapon used to stun or shock an individual. The following day, September 13th, Dr. Wilson and I discovered another Taser on a female student.

On November 7, 2016 **<u>a loaded handgun</u>** was found on a student along with a box cutter razor. According to a statement in the local paper the student stated that she brought the gun to campus

with the intent of shooting herself in the bathroom. Yet no additional safety measures have been discussed with me, or implemented by the central administration.

On November 18, 2016 a large caliber **loaded handgun** was found on campus by police and security personnel. Security stated that during a gang fight, a weapon was drawn and students began to flee the general area. This represents the 5th handgun seen on campus and the third one confiscated "THIS SCHOOL YEAR."

This plethora of weapons represent a clear and present danger to our campus and the safety and security of all of the students and staff on the entire campus. While the superintendent continues to be critical of the schools culture, he has failed to recognize and address the single most important contributor to PBHS campus culture; the culture of an extremely violent city with *violent juvenile behavior*, as witnessed by the more than 200 current students with active juvenile court cases, and a student handbook that mandates micromanagement of the schools discipline policy and suspensions by the superintendent of schools. **No other district in the entire State of Arkansas requires that building principals call and request permission from the superintendent to suspend children ...period.** This policy and required interventions have allowed disruptive students to remain in school, cause chaos, and assault numerous other students on a regular basis. It is flawed policy and is not a matter of handbook interpretation. It is what is published I the student handbook, and is what we are required to follow at the direction of the central office, and at the expense of thousands of children who want to learn and feel safe in their school environments. Many of our non-compliant children with extensive criminal records should have been expelled by now, but instead they continue to disrupt the learning environment for students who care about their education.

I often fear for my life and personal safety, and the lives and safety of my students and faculty. Again, I must reiterate, with the number of weapons floating in the city and being carried by juveniles on this campus, I fear it is only a matter of time before someone gets shot.



**EXHIBIT**
**D**

| | |
|---|---|
| College: UALR, LR | Total Years of Experience: 32 |
| Certification Based on: DOCTORATE | Years of Experience This District: 5 |
| Social Security Number: XXX-XX-3744 | Check Location: 42 |

# Certified Employee Contract
### YEAR: 2017-2018

STATE OF ARKANSAS COUNTY OF **Jefferson**

**PARTIES:** The Pine Bluff School District, Party of the First Part, and **MICHAEL W NELLUMS** Party of the Second Part, agree as follows:

**EMPLOYMENT:** The Party of the First Part by a majority vote of the School Board present at a legally held meeting on **04/24/17** agrees to employ **MICHAEL W NELLUMS** Party of the Second Part, as provided herein:

**SERVICE:** Party of the Second Part agrees to perform services as follows:  **SUPERVISOR FOR  MAINTENANCE, SAFETY, & OPERATIONS**
Additional Duty:

| | |
|---|---|
| **ADMIN EXP** | **$7,200.00** |
| **DOCT STIPEND** | **$1,890.00** |
| **SRHI ADM STIPND** | **$12,000.00** |
| **STIP /PER BOARD** | **$8,000.00** |

*# See attachment*

These services will be rendered in accordance with the policies set forth by the Party of the First Part. Compensation has been included in the total contract amount for all of the above services. Any change in services may result in a reduction of or an addition to the total compensation under this contract.

**TIME:** The period of time covered by this contract is 239 days, from **07/01/2017** through **06/30/2018**.

**COMPENSATION:** Total compensation under this contract is **$99,249.08** to be paid in 26 installments. Rate of compensation will be as follows: **$3,817.27**

Furthermore, the Party of the First Part is authorized to make legally required deductions from the compensation herein stated. Manual calculations of the above stated compensation may vary by cents.  In this event the amount stated above shall govern.

**BOARD POLICIES:** The personnel policies of each school district in effect at the time a teacher's contract is entered into or renewed shall be considered to be incorporated as terms of said contract and shall be binding upon both parties unless changed by mutual consent (Act 224 of 1983).  The parties shall follow the **Pine Bluff** School District Personnel Policies, which are made a part hereof by reference.

**CERTIFICATION:** The Party of the Second Part certifies that, at the date of this contract, he or she is not under employment contract with another school district.

**REFUND OF UNEARNED COMPENSATION:** The Party of the Second Part agrees to refund the Party of the First Part any compensation received for which no services were rendered.

**TERMINATION:** This contract may be terminated by either party pursuant to law.

**OTHER CONDITIONS:** Any subsequent contracts shall supersede the provisions of this contract.
**1. HOLD A VALID TEACHING CERTIFICATE-ANY PERSON WHO SHALL TEACH IN A PUBLIC SCHOOL IN THIS STATE WITHOUT LEGAL CERTIFICATION OR QUALIFICATION TO TEACH SHALL NOT RECEIVE FOR SUCH SERVICES ANY COMPENSATION FROM SCHOOL FUNDS.**
**2. SERVICES: ALL REASONABLE DUTIES AS ASSIGNED BY THE ADMINISTRATION.**
**3. IF SALARY IS PAID WITH FEDERAL FUNDS/GRANTS AND/OR RESTRICTED STATE FUNDS, EMPLOYEMENT IS CONTINGENT UPON FUNDING OF PROGRAMS.**

Given on **05/01/17**   *Received 6-1-17*

BY: *Michael W. Nellums 6/1/17*
_____
MICHAEL W NELLUMS

*Henry Dalner*

BY: _____
Board President

35 BERKSHIRE DRIVE
LITTLE ROCK AR 72204              501-664-9176

*Phyllis A Wilkins*

BY: _____
Board Secretary

_____      _____
Address                          Phone

<u>Contract addendum</u>

June 1, 2017

*Please note that I have shared with the administration that no stipend breakdown should be delineated in this contract. The amounts identified by category should not be included as part of my base salary. My original contract was changed by Dr. Linda Watson (without board authorization) to justify additional salary increases for other employees. My original contracts with the district represented a base salary and a supplemental contract. The new contract should reflect as much. If the contract must be delineated it should reflect standard language that you have applied in the creation of other district employee contracts : (A) an index amount of $13,144, (B) an administrative experience amount of $7,200.00 and (C) a doctoral stipend of $1,890.00

My signature indicates my acceptance of the contract for employment purposes only.

Dr. Michael Nellums, Ed.D
Principal
Pine Bluff High School



EXHIBIT
E



PBSD

Excellence All Day Every Day

# POSITION ANNOUNCEMENT

## The Pine Bluff School District
## is seeking to fill the following position:

### Supervisor for Maintenance, Safety, and Operations

*Job Description:*
The Supervisor for Maintenance, Safety, and Operations will interface across departments, when and if applicable, to ensure that there is a seamless alignment of systems and structures in maintenance. The Supervisor for Maintenance and Operations shall govern parent concerns relative to buses, the maintenance of new and existing buildings, operations, and grounds, district-wide safety, and accountability for maintaining state and local codes, and provide appropriate professional development, when and where applicable for new and current employees relative to eFinance, if and when applicable.

*Educational and Certification Requirements:*
- High School Diploma or Equivalent; *(Required)*
- Bachelor's degree or higher in human resources management, business, finance, accounting, or related field; *(preferred)*
- Prior experience working in or with construction, maintenance, and operations; *(Preferred)*
- Experience in APSCN; *(preferred)*
- Experience with Schooldude; *(preferred)*
- Experience in using various software programs; *preferred*
- **Proficient** in Excel, Word, and other Microsoft Office Products; and
- Experience working with Google (Google Docs) *(Preferred)*

*Qualifications:*
- Must be able to effectively carry out the vision and mission of the district;
- Must have a working knowledge and understanding of the Coherence Framework and be willing to implement it within the work that is done on behalf of the district